## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

**THOMAS W. CODER,**          :

        **Petitioner**       :       **CIVIL ACTION NO. 1:04-0019**

      **v.**                   :              **(KANE, D.J.)**
                                       **(MANNION, M.J.)**
**MICHAEL V. PUGH, Warden,**   :

        **Respondent**     :

## REPORT AND RECOMMENDATION

The petitioner, an inmate presently incarcerated at the United States Penitentiary at Allenwood, White Deer, Pennsylvania, filed this *pro se* petition for a writ of habeas corpus on January 7, 2004, pursuant to 28 U.S.C. § 2241. (Doc. No. 1). The petitioner alleges that the United States government arbitrarily and capriciously violated his constitutional rights by transferring him from the custody of the United States Army Disciplinary Barracks at Leavenworth, Texas, into the custody of the Federal Bureau of Prisons. (Doc. No. 1). A show cause order issued on January 23, 2004. Subsequent to being granted an extension of time in which to do so, the respondent filed a response on March 13, 2004. (Doc. Nos. 7, 8, 12). The petitioner filed a reply to the response on March 26, 2004. (Doc. No. 13). On April 20, 2004, the petitioner filed a motion for injunction, which was denied on April 21, 2004. (Doc. Nos. 19, 21).

**I.     BACKGROUND**

The petitioner ("Coder") alleges that the Federal Bureau of Prisons ("BOP") and the United States Parole Commission ("Parole Commission") violated both his due process rights, and the *ex post facto* clause of the United States Constitution, by applying federal parole guidelines to him, rather than the Department of Defense guidelines for military sentences. On April 12, 1987, while stationed in Germany, the petitioner, along with two co-defendants, hung a fellow United States Army soldier. On September 4, 1987, he received a court-martial conviction for Conspiracy to Commit Premeditated Murder and Premeditated Murder. He was sentenced on September 9, 1987 to a life sentence with the possibility of parole. (Doc. No. 2, Appendix Exhibit J-15).

On July 25, 1993, while incarcerated at United States Disciplinary Barracks ("USDB") at Leavenworth, Texas, Coder stabbed another inmate with a handmade knife. He received court-martial convictions for Possessing a Handmade Knife, and for Assault, on October 4, 1993. The convictions carried a one-year sentence. (Id.).

On May 16, 1995, the petitioner was transferred from USDB-Leavenworth into the custody of the Federal Bureau of Prisons. On June 6, 1995, the petitioner was initially designated to USP-Terre Haute. On December 3, 1997, he received a Close Supervision Transfer to USP-Lompoc

2

as a result of having been implicated in an escape plot. He was not deemed to be a leader of the plot, and so only received a disciplinary write-up for Possession of an Unauthorized Item (needles). On August 31, 2001, the petitioner was transferred to USP-Pollock. (Id.) At some later time, the petitioner was transferred to USP-Allenwood. The petitioner filed this habeas corpus petition on January 7, 2004. (Doc. No. 1).

The petitioner received his first parole hearing on January 27, 1994, before the Army Clemency and Parole Board ("ACPB"), while incarcerated at USDB-Leavenworth. (Doc. No. 1, p. 4). On April 5, 1994, the ACPB denied parole. The ACPB stated, in part:

> ...[T]he Board noted that you are in the maximum custody grade, and you have been recently court-martialed for having a knife in your possession. The Board agreed that your 37 Discipline and Adjustment Board convictions indicate a long standing conduct problem that you must address.

(Doc. No. 2, Appendix Exhibit B-5). The ACPB calculated the time remaining before release on parole to be 100+ months, to which was added 0-222 months for 37 Discipline and Adjustment Board convictions. It was noted that the petitioner had served 95 months of his life sentence at that time (Id.)

On or about January 30, 1995, the petitioner received his first annual hearing before the ACPB. He was again denied parole. The ACPB recommendations included in part:

> ...Members voting for clemency,0; against, 3. Inmate Coder desires clemency to remit his life sentence. However, it is felt to

3

> be premature. Granted, Coder has stayed out of trouble for four months, which is a major accomplishment for him. Nevertheless, he needs to stay out of trouble and abide by the rules and regulations of the institution for a substantial period of time before clemency will be the disposition
>
> ...Members voting for parole, 0: against, 3. Parole is very unlikely for Inmate Coder at this time. He has been confined for seven years and nine months of his life sentence. Most of his time has been spent breaking the rules and spending a lot of time in Base. Coder has a long way to go before he will be considered a good risk for parole. He has to stay out of trouble for a substantial period of time. Also, Coder has a reputation to overcome. Parole is premature. <u>The policy and objectives of parole will not be met by release on 16 April 1997.</u>[1]

(Doc. No. 2, Appendix Exhibit C-4)(emphasis added).

On May 16, 1995, the petitioner was transferred into the custody of the BOP. Thereafter, pursuant to Parole Commission rules, the petitioner became eligible for bi-annual parole consideration. The petitioner had his first parole hearing before the Parole Commission on January 14, 1997. On February 7, 1997, the Parole Commission denied parole, and recalculated the petitioner's severity rating and his salient factor score according to Parole Commission guidelines. (Doc. No. 1, p. 7). As a result of this recalculation, the Parole Commission recommended that the petitioner should serve a minimum of an

---

[1] The petitioner has interpreted the statement that "The policy and objectives of parole will not be met by release on 16 April 1997" as having informed him that, but for poor conduct, his release date would have been April 16, 1997. The petitioner states, "Clearly this date is the time Petitioner should have been released from confinement had Petitioner maintained clear conduct." (Doc. No. 2, p. 5).

4

additional 15 years before reconsideration for parole, which would be in January 2012. The reasons for this recommendation were, in part:

> ...[M]ore than 48 months above the base guidelines appears warranted because you plotted and orchestrated the premeditated murder of a fellow soldier. The crime was extremely heinous in that you first tricked the victim into signing a blank piece of paper which you later used to type and manufacture a bogus suicide note in an effort to cover up the murder you committed. The murder itself was heinous in that you hung the victim, and after removing the garbage can which had served as a gallows upon which the victim stood, you and your co-defendant held his arms and legs so that he could not defend himself, thus resulting in his tortuous death by strangulation...
>
> ...Further since confined you have continued to act out aggressively towards others as supported by your having received multiple serious incident reports for assault, one involving the seriously attempted maim of another inmate by your using a hand made knife to cut him. In addition you have actively participated in serious acts of rioting within a correctional facility...

(Doc. No. 2, Appendix Exhibit D-6).

The petitioner has had statutory interim parole reconsiderations on June 3, 1999, and June 20, 2001. The Parole Commission's recommendation remained the same, which was the 15-year reconsideration date in January 2012. Each parole reconsideration was appealable within 30 days to the National Appeals Board under 28 C.F.R. § 2.26. (Doc. No. 2, Appendix Exhibit D-10).

The petitioner filed an appeal of the June 3, 1999 decision with the National Appeals Board. The Board's reply dated September 7, 1999, stated:

> You contend that your offense severity rating should be recalculated because you have not incurred any new institutional

misconduct reports involving violence. Your contention has no merit. The rating of your offense behavior as Category Eight relates solely to your original offense which involved murder.

You contend that the Parole Commission's regulations do not apply in your case because you are a military inmate. Your contention has no merit. A prisoner who has been convicted by a military court-martial and sentenced to a period of confinement, may be transferred to a civilian prison for service of that sentence. 10 U.S.C. § 858(a). A prisoner who is transferred to a civilian institution is subject to the same discipline and treatment as other persons confined in the civilian institution...Courts have found that this provision includes parole procedures. See Walker v. Luther, 830 F.2d 1208, 1214 (2d Cir. 1987).

All decisions by the National Appeals Board on appeal are final.

(Doc. No. 2, Appendix D-12).

## II.  **DISCUSSION**

The petitioner argues that the Federal Bureau of Prisons and the Parole Commission violated his due process rights and the *ex post facto* clause of the United States Constitution in applying the federal parole rules to him rather than the Army parole rules. Specifically, the petitioner claims that the statutory and regulatory provisions providing for subsequent parole hearings applied to him after his transfer to the BOP violate his due process rights because he would have received rehearings annually if he had remained in Army disciplinary barracks custody, rather than bi-annually as mandated by the Parole Commission regulations. He also maintains that there was an *ex post facto* clause violation because his parole release date has been

arbitrarily extended. The respondent replies that neither the petitioner's due process rights, nor the *ex post facto* clause, were violated.

The petitioner argues that the following errors occurred as a result of his transfer into BOP custody:

> The [Army]..[i]n signing over jurisdiction in matters concerning parole, allowing the [Parole Commission] to apply its own guidelines...violates the decision in <u>Jefferson v. Hart</u>, determined by the U.S. District Court of Kansas...
>
> ...Due to the fact that the guidelines of the [Parole Commission]...are similar to those outlined in the military guidelines, Department of Defense Instructions (DODI) 1325.4 1988, these actions are in violation of the ex post facto clause of the United States Constitution...
>
> ...The [BOP], accepting custody of Petitioner, re-aggregated Petitioner's time to be served in confinement to 540 months and re-committed Petitioner on June 6, 1995. This action, in fact, resentenced Petitioner without the benefit of due process of law...The BOP changed Petitioner's parole eligibility date to April 1997...This action violates the ex post facto clause...
>
> ...The [Parole Commission]...changed Petitioner's parole consideration from annually to biannually...this violates the ex post facto clause, and the right to due process...

(Doc. No. 2, pp. 13-14).

Initially the court notes that the petitioner's reliance on <u>Jefferson v. Hart</u>, 1993 WL 032137 (D.Kan.), is misplaced. That case dealt exclusively with Army parole regulations, and was not concerned with a military inmate in BOP custody. At the time of Jefferson's conviction, Army parole regulations, as applicable to Jefferson, would have made him eligible for parole consideration after expiration of one year of his sentence. That regulation was subsequently

7

changed in 1988 in such a way that Jefferson would no longer be eligible for parole until after he had served ten years of his sentence. The United States District Court for the District of Kansas ruled that the change as applied to Jefferson did violate the *ex post facto* clause. This was so, the court reasoned, because the new regulation removed any discretion on the part of the ACPB until after the expiration of ten years of the sentence, and this worked to Jefferson's disadvantage. Jefferson,1993 WL 032137 *4. Because Jefferson does not deal with Parole Commission rules and guidelines as applied to military inmates, it is inapplicable to the petitioner's claims.

As to the petitioner's argument that the statutory and regulatory provisions which were applied to him after his transfer to the BOP violate his due process rights, there is no merit to this claim either. 10 U.S.C. § 858(a) states:

> (a) Under such instructions as the Secretary concerned may prescribe, a sentence of confinement adjudged by a court-martial or other military tribunal, whether or not the sentence includes discharge or dismissal, and whether or not the discharge or dismissal has been executed, may be carried into execution by confinement in any place of confinement under the control of any of the armed forces or in any penal or correctional institution under the control of the United States, or which the United States may be allowed to use. <u>Persons so confined in a penal or correctional institution not under the control of one of the armed forces are subject to the same discipline and treatment as persons confined or committed by the courts of the United States or of the State, Territory, District of Columbia, or place in which the institution is situated.</u>

10 U.S.C. § 858(a)(emphasis added). This language has been interpreted by

the courts to mean that military prisoners in BOP facilities are governed by BOP rules, including the rules and guidelines pertaining to parole consideration. Artis v. U.S. Department of Justice, et al., 166 F. Supp.2d 126 (D. N.J. 2001); Romey v. Vanyur, 9 F.Supp.2d 565 (E.D.N.C. 1998).[2] Regarding a military inmate's claim of a due process violation as a result of being subjected to BOP and Parole Commission regulations, the court stated in Artis:

> ...[T]o the extent that Petitioner is alleging a procedural due process right to the procedures of the military parole scheme, his claim fails because Petitioner does not have any liberty interest in parole under the military parole system. AR 15-130, § 2-2(c) explicitly states that "there is no right to...parole." Inasmuch as the military parole regulations do not create any liberty interest in parole release, Petitioner does not have any procedural due process rights under that system. *See* Brandon v. District of Columbia Bd. of Parole, 823 F.2d 644 (D.C.Cir. 1987)(mere fact that government establishes certain procedures does not mean that procedures thereby become substantive liberty interests entitled to federal constitutional protection under due process clause.)

Artis, 166 F.Supp.2d at 131.

The petitioner also can not establish an *ex post facto* clause violation.

---

[2]Furthermore, Army Regulation ("AR")15-130, § 3-1(e)(9) expressly states that a military prisoner, upon transfer to a federal penal institution, is subject to the same discipline and treatment as any other federal prisoner, and is not subject to military regulations. AR15-130, § 3-1(e)(9) states: "Prisoners transferred to Federal facilities are under the control of the U.S. Parole Commission, unless otherwise designated in writing. As such, Federal and Commission procedures apply, not those of this regulation."

Article I, Section 9, Clause 3 of the United States Constitution prevents Congress from passing *ex post facto* laws. In order to constitute a violation of the *ex post facto* clause the new law must be one which punishes as a crime an act previously committed which was innocent when done; or which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with a crime of any defense available according to law, at the time when the act was committed. Dobbert v. Florida, 432 U.S. 282, 292 (1977). Therefore, to offend the *ex post facto* clause in this case, the Parole Commission regulations must somehow increase Coder's punishment, either actually or potentially. *See* Warren v. United States Parole Commission, 659 F. 2d 183, 193 (D.C. Cir. 1981).

The petitioner has not stated a cause of action sounding in a violation of the *ex post facto* clause by virtue of the application of the parole guidelines in his case. The application of the parole guidelines in Coder's case has not increased his punishment, either actually or potentially. Coder was sentenced to a maximum life term. In January 2012, the anticipated date for parole consideration, the petitioner will have served approximately 24 years, 8 months incarceration. Therefore, his punishment has not been increased, either actually or potentially.

The lynchpin of Coder's argument is his apparent assumption that he would have been paroled, under the Army guidelines, upon his completion of a few additional years of clear conduct beyond April 16,1997. When the

ACPB stated on January 30, 1995, that Coder's parole was premature at that time, and that the "policy and objectives of parole will not be met by release on 16 April 1997", Coder interpreted that remark as an indication of when he could expect to be released from USDB custody.  He stated, "Clearly this date is the time Petitioner should have been released from confinement had Petitioner maintained clear conduct." (Doc. No. 2, p. 5).  As indicated above, the petitioner has no constitutionally protected right to be paroled. *See*, Greenholtz v. Inmates of Neb. Penal and Corr. Complex, 422 U.S. 1,7 (1979)("There is no constitutional or inherent right of a convicted person to be conditionally released before expiration of a valid sentence."); Rodgers v. Parole Agent SCI-Frackville, 916 F. Supp. 474, 476 (E.D. Pa. 1996)("[T]he 14th amendment does not provide that every prisoner has a right to be paroled, or that any expectation of parole is a constitutionally protected liberty interest.")(emphasis in original).

Furthermore, there is no guarantee, even if the ACPB had continued to consider the petitioner for parole, and had applied Army parole regulations, that the petitioner would have been paroled. No one knows what the ACPB would have chosen to do. The court notes that in denying parole on January 17, 1997, one of the Parole Commission panel members observed:

> ...Clearly the policy states that a decision more than 48 months above the open ended guidelines is warranted in extreme cases such as this one where the element of premeditation by torture is present.  I clearly see this case as involving torture.  The victim was hung by a rope. [Coder] held his hands so that the victim

11

> could not defend himself while his codefendant held the victim's legs so that he could not kick in an effort to defend himself after the two pushed the garbage can out from under his feet, thus causing the rope around his neck to tighten and cut off his air supply. They did not want to tie or bind him in order to eliminate any evidence of a murder and thus make this look like a suicide. They further attempted to make this look like a suicide by creating a suicide note, typing it onto a blank piece of paper that [Coder] tricked the victim into signing before he was taken to a remote vineyard area where he was hung. The element of premeditation in this case is clearly present as [Coder] had come up with the idea to murder his friend several weeks before and had talked two others into assisting...

(Doc. No. 2, Appendix D-5). The ACPB could have made the same observations, and come to the same conclusion. Therefore, the petitioner cannot prove that he is worse off under the Parole Commission guidelines, as opposed to the Department of Defense guidelines for military sentences.

The petitioner also argues that a violation of the *ex post facto* clause is established because the Parole Commission's statutory and regulatory provisions provide only for bi-annual parole suitability hearings, rather than the annual hearings he would have received had he remained in the custody of the USDB. The court noted in Artis that the change in frequency of parole hearings does not constitute an increase in the punishment already imposed on an inmate, and so therefore cannot violate the *ex post facto* clause. Artis, 166 F. Supp.2d at 128, citing California Dep't of Corrections v. Morales, 514 U.S. 499, 513 (1995). *See also* Romey, 9 F. Supp.2d at 572 ("it is unclear that a delay in a parole hearing constitutes punishment at all.").

The sum and substance of the petitioner's complaint with the Parole Commission's regulations is that he believes that, as applied to him, they "had the effect of re-sentencing Petitioner without the benefit of due process of law..." (Doc. No. 1, p. 21). There is no evidence in the record that the petitioner was re-sentenced, or that his sentence changed in any manner.[3] Only the petitioner's projected parole consideration date was recalculated. Again, as explained above, for purposes of both due process and *ex post facto* analysis, the eligibility for parole date is of no consequence. As applied to the petitioner, the Parole Commission guidelines have not increased his sentence. As a result, the petitioner is not entitled to habeas corpus relief and the petition should be denied.

---

[3]The court notes that the petitioner has claimed that the Parole Commission has changed his sentence so as to make it a life sentence without the possibility of parole. (Doc. No. 1, p. 21). There is no evidence whatsoever that such a claim is true. Furthermore, the Parole Commission has plainly indicated that the petitioner will be considered for parole as of 2012.

### III. RECOMMENDATION

On the basis of the foregoing, it is recommended that the Petition for Habeas Corpus (Doc. No. 1) be **DENIED**.

<u>s/ Malachy E. Mannion</u>
MALACHY E. MANNION
United States Magistrate Judge

Dated:   November 12, 2004

O:\shared\REPORTS\04-0019.wpd